IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAMEISHA HAMILTON and DANIELLE CALLAGHAN, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. CIV-04-266-L |
| BOISE CASCADE EXPRESS, a division of BOISE CASCADE OFFICE PRODUCTS, a corporation, SAMANTHA MOHR, ROBERT HARPER, and LAURIE JOHNSON, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

# O R D E R

On March 11, 2004, plaintiffs[1] filed this action seeking damages for alleged employment discrimination. Plaintiff Kameisha Hamilton contends she was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. Plaintiff Danielle Callaghan contends she was discriminated against on the basis her gender and was retaliated against for complaining of gender discrimination and a hostile work environment. This matter is before the court on defendants' motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a

---

[1]Plaintiffs Valetta Wright-Taylor, Dorothy Lambe, and Ajeenah Spriggs settled their claims with defendants in December 2005.

Case 5:04-cv-00266-L   Document 127   Filed 01/19/06   Page 2 of 13

judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed evidence establishes that Callaghan was hired by defendant Boise Cascade Office Products ("Boise") to work in its Norman, Oklahoma facility in May 2000. She was promoted to Sales Team Leader in March 2001. Defendant Samantha Mohr was hired as the site manager for Boise's Norman facility in October

2001. Since March 31, 2003, defendant Laurie Johnson has been the Human Resources Manager at the facility. At all times relevant to this action, defendant Robert Harper was employed as a District Sales Manager; he was Callaghan's immediate supervisor during the majority of her tenure at Boise.

Harper was one of the individuals who interviewed Callaghan when she applied for employment with Boise and again when she was promoted to sales team leader ("STL") in March 2001. Deposition of Danielle Callaghan at 71-72, 74, 80. Callaghan contends that Harper began treating her differently in September or October 2002. Id. at 203. She testified Harper

> really stressed me out because he would make comments to me saying that if I disagreed with him, I would be disagreeing in the unemployment line. And he had threatened my job a few times, a few times he said that.
>
> And he never came over to help me with anything, and I actually asked about it on a one on one, and I said, "Robert, do you not like me anymore? Because you never come over and say anything." And that's when he said, "Well, no, I don't do that with my veterans. I only help the new STLs."

Id. at 223. In addition, Harper also told Callaghan's team that he felt sorry for them because she was their leader. Id. at 229-30.

On November 8, 2002, Callaghan talked to Mohr about Harper. Id. at 281-82; Plaintiffs' Exhibit 43. Callaghan told Mohr she "felt like [Harper's] treating me terrible because I'm a woman." Deposition of Danielle Callaghan at 282. In her notes, Mohr

reflected that Callaghan reported that Harper "treats the males who work for him better/differently than the females." Plaintiffs' Exhibit 43.

On January 23, 2003, Callaghan began reporting to District Sales Manager Larry Woods. Id. at 335. Nonetheless, on January 28, 2003, Harper met with Callaghan to discuss her performance appraisal for 2002. The appraisal reflects that Callaghan met or exceeded expectations in all areas. Exhibit 37 to Deposition of Danielle Callaghan. Harper commented that "Danielle needs to expand out of the small circle of STL's she helps and become a team player on a larger center basis." Id. at 2. In the Overall Performance Summary, the appraisal reminded Callaghan to "[a]lways remember that STL's are held to a higher standard of behavior." Id. at 4.

On February 3, 2003, Callaghan was suspended with pay pending an investigation. Boise Human Resources administrator Cyndi Cary conducted the investigation, which consisted of questioning Callaghan and interviewing ten members of her team. Plaintiffs' Exhibit 50. On February 5, 2003, Woods and Cary informed Callaghan that she was being terminated for telling an offensive joke to her sales representatives and for practicing favoritism. Deposition of Danielle Callaghan at 343-44, 350. While Callaghan denied telling the joke,[2] she concedes that exhibiting favoritism and telling inappropriate jokes was grounds for termination. Id. at 357.

---

[2] Id. at 344, 349.

Hamilton began her employment at the Norman facility on March 24, 2003. Exhibit 8 to Deposition of Kameisha Hamilton. In early May 2003, she injured her knee at home. As a result, she attended physical therapy sessions in Oklahoma City on May 19, May 28, May 29, June 9, and June 11, 2003. Her therapy sessions lasted one to two hours. In addition, Hamilton had appointments with her physicians on April 30, May 6, May 19, June 2, June 9, and June 16, 2003. Hamilton's physicians were also located in Oklahoma City, at least a 40-minute drive from Boise's Norman location. Hamilton's scheduled work hours were from 7:30 a.m. to 4:30 p.m. Deposition of Laurie E. Johnson at 92. Although the record does not reflect the exact times of Hamilton's appointments, she testified that she was never at her doctors' offices before 8:00 a.m. or after 5:00 p.m. Deposition of Kameisha Hamilton at 216-17. She admitted that if she had a one-hour physical therapy appointment at 4:00 p.m., she would have to leave the office by 3:20 p.m. and if the appointment was for two hours, she would have to leave by 2:20 p.m. Id. at 217-18. If she had a 4:00 p.m. doctor's appointment, she would have to leave Norman no later than 3:00 p.m. Id. at 218-19.

Hamilton signed weekly time sheets while she was employed at Boise. On May 6, May 28, May 29, June 2, and June 11, 2003 – dates when she had doctor's or physical therapy appointments – Hamilton certified that she worked and should be paid for eight hours. *See* Plaintiffs' Exhibit 21. In mid-June 2003, one of Hamilton's co-workers spoke to Woods and questioned the extent of Hamilton's time

off.  Deposition of Laurie E. Johnson at 59-60.  Based on her review of Hamilton's time sheets, key fob[3] records, phone reports, and log-in/log-out records, Johnson concluded that Hamilton inaccurately reported her time on the following dates:  May 1, May 22, May 30, June 2, June 11, June 12, June 16, June 19, and June 20, 2003.  Id. at 82-99.

On June 23, 2003, Harper brought Hamilton to a meeting in Johnson's office; Johnson, Harper,[4] and Hamilton were the only persons attending the meeting.  Deposition of Kameisha Hamilton at 159.  Johnson indicated the purpose of the meeting was to discuss Hamilton's excessive absenteeism and time sheet fraud.  Id.  According to Johnson, Hamilton admitted during the meeting that she had not recorded her time accurately.  Deposition of Laurie E. Johnson at 111.  Hamilton argues that she worked through lunch periods and on days she was scheduled to be off to compensate for the time she missed due to doctor's and physical therapy appointments.  Deposition of Valetta Wright, Vol. II, at 131.  At the conclusion of the meeting, Hamilton was informed that she was being terminated for time sheet fraud.  Deposition of Kameisha Hamilton at 163.

---

[3] Each employee was given a badge, also known as a key fob, to enter Boise's building. Deposition of Laurie E. Johnson at 33-34.  When the badge was swiped over an electronic key pad, the time of entry was recorded.  Id.  On May 1, 2003, Mohr issued a written memorandum to all employees reiterating that Boise's policy required all employees to use their key fob every day. Plaintiffs' Exhibit 8.  Employees, however, were not required to use their key fobs to record when they left the building.

[4] Though Harper was present during this meeting, he did not say anything and was not involved in the decision to terminate Hamilton.  Deposition of Kameisha Hamilton at 64; Deposition of Laurie E. Johnson at 30.

As this matter is before the court at the summary judgment stage, the court utilizes the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze plaintiffs' Title VII and § 1981 claims.  *See* Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220, 1225-26 (10th Cir. 2000); Maldonado v. City of Altus, Oklahoma, ___ F.3d ___, Case No. 04-6062, slip op. at 24 (10th Cir. Jan. 11, 2006).

> Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." Once the plaintiff has established a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its employment action.  If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.
>
> * * *
>
> The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination."

Kendrick, 220 F.3d at 1226, 1227 (citations omitted).  A plaintiff in a wrongful discharge suit establishes a prima facie case by demonstrating: (1) she belongs to a protected class; (2) she was qualified for the position; (3) despite her qualifications, she was terminated; and (4) the position was not eliminated after her discharge. Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005).  Hamilton alleges race

discrimination under Title VII and § 1981. Callaghan's Title VII claim is based on gender discrimination.

In addition to her disparate treatment claim under Title VII, Callaghan contends her termination was retaliation for complaining to Mohr about gender discrimination. In her § 1981 claim, Callaghan, who is white, contends she was retaliated against for associating with minority employees. "[T]he elements of a retaliation claim under § 1981 are identical to those required under Title VII." Maldonado, slip op. at 27. Callaghan must therefore show (1) she "engaged in protected opposition to discrimination;" (2) she was subjected to an adverse employment action; and (3) "there exists a causal connection between the protected activity and the adverse action." Id. (*quoting* Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1103 n.1 (10th Cir. 1998)). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982). Temporal proximity alone is insufficient to establish causation unless the time between protected activity and retaliation is very close. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). A three-month period standing alone is insufficient to establish causation; in that instance, plaintiff must offer additional evidence in support. Id.

Because plaintiffs' disparate treatment claims hinge on whether they can establish pretext, the court assumes for purposes of ruling on defendants' motion that they can establish their prima facie cases.

> Under Tenth Circuit precedent, pretext may be shown by "such weaknesses in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." A plaintiff can make a showing of pretext with evidence that the defendant's stated reason for termination was false.

Bryant v. Farmers Ins. Exchange, ___ F.3d ___, Case No. 03-3234, slip op. at 20 (10th Cir. Dec. 20, 2005).

Boise has met its burden of articulating legitimate, nondiscriminatory reasons for the decision to terminate plaintiffs. Defendants assert that Hamilton was terminated for timecard fraud and Callaghan was terminated because she told an inappropriate joke. Thus, the presumption of discrimination drops out of the case and the burden shifts to plaintiffs to establish pretext. Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1307 (10th Cir. 2005) (*per curiam*). To do so, plaintiffs must call into question the good faith of Boise's belief that plaintiffs violated work rules. *See* Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

> It is not enough that a factfinder could disagree with the employer's assessments. "The relevant inquiry is not

9

> whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Id.; see also Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997) ("[A plaintiff] cannot avoid summary judgment with an unadorned claim that a jury might not believe [defendant's] explanation for his termination; he must point to evidence suggesting that [defendant] itself did not honestly believe that explanation.")

Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1138 (10th Cir. 2004).

In light of the undisputed evidence of Hamilton's appointments, Hamilton cannot dispute that she inaccurately reported her time. She argues, however, that she did not do so intentionally and did not have fraudulent intent.[5] As Mohr testified, however,

> It wasn't necessary for [Hamilton] to admit to, quote, fraud. It was necessary for her to admit she knew the time sheets were wrong. Whether she equates that with fraud or not, frankly, wasn't relevant.
>
> What I knew is that she admitted that she knew these time sheets were wrong and that she was not at work during the times that we reviewed with her where she was

---

[5]She also argues that Harper and Johnson admitted "that they did not believe Hamilton had committed fraud". Plaintiffs' Surreply in Opposition to Summary Judgment at 14 n.2. In support of this "admission", plaintiffs cite the testimony of former plaintiff Wright-Taylor "that Robert [Harper] said to me after they investigated that they don't believe that Kameisha intentionally was fraudulent on her time card. . . . And Laurie [Johnson] was right there." Deposition of Valetta Wright at Vol. II, p. 143. Plaintiffs' reference to Harper as "the person involved in terminating Ms. Hamilton (Robert Harper)" is disingenuous at best. Plaintiffs' Surreply in Opposition to Summary Judgment at 4. Hamilton admits that Harper was merely present during her termination interview and that he said nothing during that meeting. Deposition of Kameisha Hamilton at 64. The decision to terminate Hamilton was made by Mohr, Johnson, and Diane Wiley, Boise's Area Human Resources Manager. Deposition of Laurie E. Johnson at 30. There is no evidence that Harper had any input in the decision.

> missing. That's what she admitted to. Whether she characterized it as a mistake or whatnot, I couldn't say. What I know is that she had admitted to physically not being at work and the information on the time sheets being incorrect.
>
> * * *
>
> Granted, she may not choose to characterize it as fraud; however, we do. I fully understand she characterizes it as a mistake, we characterize it as fraud. Either way, she admitted the time should not have been paid.

Deposition of Samantha Mohr at 228-29, 232. Hamilton has not demonstrated that Boise did not believe Hamilton had committed fraud; indeed, the evidence is to the contrary. The fact that defendants discovered additional timecard discrepancies after this action was filed is not evidence that defendants are offering inconsistent explanations for the decision to terminate Hamilton. Boise has consistently maintained that it discharged Hamilton because of timecard fraud.

Likewise, Callaghan denies making an inappropriate joke. It is undisputed, however, that during her investigation Cary was told by four individuals that Callaghan had in fact told the joke. Plaintiffs' Exhibit 50. Plaintiff has offered no evidence that this conclusion was unreasonable or not honestly held. Callaghan's assertion that Boise has offered shifting explanations for her discharge because her termination letter indicates she was terminated because of performance issues[6] is belied by the record. Cary's contemporaneous notes reflect that Cary "told

---

[6] See Plaintiffs' Exhibit 44.

[Callaghan] she no longer had a job with Boise due to integrity which is one of our core values and part of her job performance." Plaintiffs' Exhibit 50 at 7.  Likewise, Mohr testified that "[b]ehaving inappropriately is certainly a performance issue overall."  Deposition of Samantha Mohr at 233.  Contrary to plaintiff's assertion, Boise has offered the same explanation for her discharge since the beginning. Callaghan's argument that "both the offering of a severance package and Carey's [sic] advise [sic] not to sign the severance package are evidence that Boise knew its proffered reasons were pretextual"[7] is not supported by the record.  In support of her assertion that Cary advised Callaghan not to accept the severance agreement, plaintiff cites only her own deposition; she does not, however, provide the cited pages to the court.[8]  Moreover, merely offering a severance package in insufficient to establish pretext.[9]

The court's analysis of the pretext issue is also fatal to Callaghan's retaliation claims.  O'Neal, 237 F.3d at 1252.  Moreover, it is not clear that she has established her prima facie case with respect to these claims.  Callaghan complained of gender

---

[7]Plaintiffs' Surreply in Opposition to Summary Judgment at 15.

[8]Plaintiffs cite pages 356 and 358 of Callaghan's deposition.  The court has been unable to locate those pages in the record.  As the Tenth Circuit has noted, "on a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record.'" Cross v. The Home Depot, 390 F.3d 1283, 1290 (10th Cir. 2004) (citations omitted).

[9]The cases cited by plaintiffs are inapposite.  For example, the issue in Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338 (9th Cir. 1987), was the admissibility of a severance agreement under Fed. R. Evid. 408, not whether such agreements constitute *per se* evidence of pretext. Id. at 1342.

discrimination on November 8, 2002. Thereafter, Harper – the person against whom she complained – gave Callaghan a favorable evaluation. Moreover, Callaghan was discharged nearly three months after her protected activity and there is no evidence that Harper was involved in the decision to terminate her. *See* Deposition of Danielle Callaghan at 337-38, 367. Given the length of time between her protected activity and her termination, Callaghan was required to offer more than mere temporal proximity to support causation. She has not done so. Callaghan's retaliation claim under § 1981 also fails because there is no evidence that racial animus motivated her termination. *See* O'Neal, 237 F.3d at 1257.

In sum, Defendants' Motion for Summary Judgment (Doc. No. 83) is GRANTED with respect to plaintiffs Kameisha Hamilton and Danielle Callaghan. Plaintiffs' Motion for Partial Summary Judgment as to Certain Affirmative Defenses and Set-Offs (Doc. No. 82) is DENIED as moot. Judgment will issue accordingly.

It is so ordered this 19th day of January, 2006.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge